UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:11CV-P384-H

LESLIE LEE LAWSON                                                                    PLAINTIFF

v.

GLENN DOTSON *et al.*                                                              DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on a motion for leave to amend and supplement the

complaint by *pro se* Plaintiff Leslie Lee Lawson (DN 22).  Plaintiff, an inmate at the Kentucky

State Reformatory (KSR), brought this action under 42 U.S.C. § 1983.  Upon the initial review

of the complaint pursuant to 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d 601

(6th Cir. 1997), the Court entered a Memorandum Opinion and Order dismissing all of Plaintiff's

claims except for his denial-of-access-to-courts claims against Glenn Dotson, Krystal Woods,

and Kimberly Jefferson in their individual capacities for money damages and injunctive relief

and in their official capacities for injunctive relief only.

Plaintiff now moves to amend and supplement the complaint.  The Court **CONSTRUES**

the motion also as a proposed amended complaint since Plaintiff did not file a separate proposed

amended complaint.  Plaintiff seeks to add claims against Dotson, Woods, and Jefferson and to

add new claims against twelve other individuals:  (1) Cookie Crews, KSR Warden; (2) Laura

Simpson, CUA I, Grievance Coordinator, KSR; (3) Jeanette Wall, Lt., Adjustment Committee

Hearing Officer, KSR; (4) Dawn C.  Deckard, Lt., Investigation Officer and Adjustment

Committee Hearing Officer, KSR; (5) Amy Roby, CUA II, KSR; (6) Patrick Kessinger, CUA I,

KSR; (7) James R.  Mensing, C/O, KSR; (8) Alicia J.  Boyd, Classification Duty Designee;

(9) Ravonne Sims, CUA II, KSR; (10) Paula Holden, Branch Manager of Classifications and

Transfers, Frankfort, KY; (11) Cathy Buck, Grievance Coordinator and Westlaw Library, Luther

Luckett Correctional Complex (LLCC); and (12) LaDonna H. Thompson, Commissioner of the

Kentucky Department of Corrections, Frankfort, KY.  Plaintiff also seeks to add four John Does

as Defendants.  He states that he sues each person in their individual and official capacities.

Defendants filed a response to the motion, and the motion is now ripe.  For the following

reasons, the motion will be granted in part and denied in part.

**I.**

Plaintiff's motion is thirty-six pages and primarily consists of his descriptions of

conversations with the individuals he seeks to add to this lawsuit and grievances he filed.  The

Court will do its best to summarize the facts alleged by Plaintiff.

Plaintiff states that Defendants "directly or indirectly participated in a continuous course

of action" in violation of 42 U.S.C. §§ 1981, 1982, 1983, 1985, and 1986.  He alleges that all of

the Defendants "conspired between each other in a course of action against the Plaintiff in both a

retaliatory and discriminatory manner in violation of the Plaintiff's Constitutional rights" in his

attempts to access Westlaw computers, the courts, and the grievance system.

Plaintiff claims that in December 2009 Dotson denied him access to KSR's Westlaw

computers.  He states that Jefferson asked him why he did not have a pass for the building and

why he did not have a job.  He further states that Mensing gave him a write up for not having a

pass and that Walls found him guilty and gave him a reprimand and a warning.  Plaintiff states

that "these chain of events was the first instances of the retaliation and discrimination toward

Plaintiff by Defendant Dotson" for Plaintiff trying to exercise his rights under the grievance

2

procedure.  He states that his right to access the courts was also violated in that he was attempting to prepare a 28 U.S.C. § 2254 petition for writ of habeas corpus.  Plaintiff also states that on December 30, 2009, Sims asked him why he did not have a prison job and told him that he was spending too much time using the Westlaw library.

Plaintiff states that in June 2011 Jefferson made up a false disciplinary report stating that Plaintiff had called Dotson an expletive in a loud voice in front of other inmates.  Plaintiff states that the disciplinary report was discriminatory and in retaliation for him using the Westlaw computers and filing grievances against Jefferson, Dotson, and Woods.  He states that he told Deckard this, but she still recommended that it go before the Adjustment Committee.  He filed grievances against Jefferson but Dotson refused to process the grievances stating that it was a non-grievable issue because Plaintiff had been issued a disciplinary report even though Dotson knew it was false.  A disciplinary hearing was held on June 22, 2011, before Walls, and the charge was dismissed.  Plaintiff filed more grievances about the false disciplinary report, and Dotson again rejected them.

Plaintiff states that on July 1, 2011, he was in the Westlaw library when Woods ordered him and another white inmate to leave the library while the black inmates were not asked to leave.  He states that only the two white inmates were asked to leave and that the black inmates did not have passes to be there.  He states that Woods did not even ask to see the black inmates' passes.  He says that it was "racially motivated."  He states that Woods later admitted that it happened but would not explain why.  He asked Jefferson, Woods's supervisor, to investigate further, but Jefferson would not and told Plaintiff that he could file a grievance.  Plaintiff states

that he wrote a grievance but Dotson put it in the non-grievable category, which was discrimination and retaliation.

Plaintiff further states that Dotson then told Sims and Roby that he was still coming to the Westlaw library and grievance office and that Plaintiff was harassing Dotson, Jefferson, and Woods and had not gotten a job.  Dotson suggested that Plaintiff be transferred.  Plaintiff was called to Roby's office, and he told her that he was working on a § 2254 and two § 2241 petitions.  Roby told Plaintiff that his time ran out long ago to file a habeas action and that he should stay out of the Westlaw library or he was going to end up in trouble.

Plaintiff also states that Jefferson gave him an indigent pack without a writing tablet on two occasions.  On the second occasion, Plaintiff refused to accept the indigent pack, and Jefferson gave him a write-up.  He states that Jefferson wrote Plaintiff up in retaliation for filing grievances over the Westlaw library.  However, Plaintiff was found guilty.  Roby then had Plaintiff put in for a reclass and transfer.  He states that he was ordered to be transferred by Kessinger.  He states that his transfer was retaliatory and discriminatory for him using the grievance procedure

On August 10, 2011, Plaintiff states that he was not permitted legal copies of some exhibits he needed for filing his habeas action.  He states that Simpson denied his copy request because she said he did not have a pending habeas action at that time and the time for filing a habeas action ended long ago.

Plaintiff states that on October 4, 2011, he was transferred from KSR to LLCC.  He states that he once again ran into problems with getting access to the Westlaw computers and access to the courts.  He said he was not allowed to use the Westlaw computers due to the policy of Cathy

4

Buck.  He states that an inmate legal aide offered to get any information he needed from Westlaw, and Plaintiff declined the offer.  He said that he was transferred back to KSR before he got the opportunity to use the Westlaw computers there.

Plaintiff also seeks to add an additional $750,000 in damages against the additional Defendants.

## II.

Under Fed. R. Civ. P. 15(a), a party may amend a pleading once as a matter of course within twenty-one days after serving the pleading or, if the pleading is one to which a responsive pleading is required, twenty-one days after service of a responsive pleading or motion under Rule 12(b), (e), or (f).  Fed. R. Civ. P. 15(a)(1).  Otherwise, "a party may amend its pleading only with the opposing party's written consent or the court's leave."  The rule directs that the "court should freely give leave when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Moreover, Fed. R. Civ. P. 15(d) provides, "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."

Because any claims must be reviewed under 28 U.S.C. § 1915A and *McGore v. Wrigglesworth*, 114 F.3d at 604, the Court must determine whether Plaintiff's proposed claims would survive initial review to determine whether his motion to amend and supplement should be granted.

## A.    42 U.S.C. §§ 1981 and 1982

Section 1981(a) of Title 42 of the United States Code has been construed as a prohibition against certain forms of racial discrimination.  *Saint Francis College v. Al-Khazraji*, 481 U.S.

5

604, 608-10 (1987).  The elements of a claim under § 1981 are:  "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e. make and enforce contracts, sue and be sued, give evidence, etc.)."  *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

Section 1982 protects the property rights of citizens and provides:  "All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."  Section 1982 was designed to prohibit all racial discrimination, whether or not under color of law, with respect to the purchase and sale of property.  *United States v. Brown*, 49 F.3d 1162, 1166 (6th Cir. 1995) ("Section 1982 was enacted to enable Congress to enforce the Thirteenth Amendment, specifically to 'prohibit all racial discrimination, private and public, in the sale and rental of property.'") (quoting *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 437 (1968)).

Plaintiff fails to state how the facts he alleges fall within the ambit of § 1981 or 1982.  Plaintiff states that he is white.  Therefore, Plaintiff's motion to amend his complaint to add claims under §§ 1981 and 1982 will be denied.

**B.**    **42 U.S.C. §§ 1985 and 1986**

Plaintiff does not state on which section of § 1985 he is relying.  Based on his allegations, however, the Court presumes that he is alleging violations under 42 U.S.C. § 1985(3).  The Sixth Circuit has held that a viable 42 U.S.C. § 1985(3) claim must contain:

(1) [A] conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.

6

*Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839 (6th Cir. 1994) (*citing Hilliard v. Ferguson*, 30 F.3d 649, 652-53 (5th Cir. 1994)).  A plaintiff  "must also establish that the conspiracy was motivated by a class-based animus." *Johnson*, 40 F.3d at 839.

First, Plaintiff has failed to appropriately plead the "class-based animus" element.  The inquiry is two fold:  the plaintiff must allege that he possesses the characteristics of a discrete and insular minority, such as race, national origin, or gender, *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.*, 32 F.3d 989, 994 (6th Cir. 1994), and the plaintiff must also put forth specific facts indicating there was a conspiracy motivated by class-based, invidiously discriminatory animus. *Bartell v. Lohiser*, 215 F.3d 550, 559-60 (6th Cir. 2000).   In other words, "as the Supreme Court recently held, a complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief. . . . [A section 1985] claim can survive only if [the plaintiff] pleaded facts supporting that conclusion." *Nali v. Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009).  Plaintiff has not pleaded any such facts.

Additionally, the alleged conspiracy must "be pled with some degree of specificity and . . . vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim." *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 832 (6th Cir. 2007) (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)). Nowhere in Plaintiff's motion does he plead the "specifics" of any alleged conspiracy such as "when, where, or how the defendants conspired." *Perry v. Southeastern Boll Weevil Eradication Found., Inc.*, 154 F. App'x 467, 477 (6th Cir. 2005).  His allegations of a conspiracy are merely

conclusory and unsupported by the requisite material facts.  Therefore, Plaintiff's motion to add conspiracy claims under § 1985 will be denied.

A cause of action under § 1986 is based on the violation of § 1985.  *Bartell v. Lohiser*, 215 F.3d at 560 (explaining that a "§ 1986 claim is derivative and conditioned on establishing a § 1985 violation").  As this Court has concluded that Plaintiff has not stated a § 1985 claim, Plaintiff also cannot add a § 1986 claim.

## C.    42 U.S.C. § 1983

### 1.    Official-capacity claims

Plaintiff seeks to add claims against all of the newly named Defendants in their official capacities.  He seeks to add claims for monetary damages.  "Official-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  As all of these individuals are employees or officers of the Commonwealth of Kentucky, the claims brought against them in their official capacities are deemed claims against the Commonwealth of Kentucky.  *See Kentucky v. Graham*, 473 U.S. at 166.  State officials sued in their official capacities for money damages are not "persons" subject to suit under § 1983.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).  Thus, because Plaintiff seeks money damages from state officers or employees in their official capacities, he fails to allege cognizable claims under § 1983.  Additionally, the Eleventh Amendment acts as a bar to claims for monetary damages against these Defendants in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169.

8

Therefore, Plaintiff's motion to add official-capacity claims against all Defendants will be denied.[1]

### 2.    Individual-capacity claims

#### a.    Crews, Boyd, Holden, Thompson, and John Does

Plaintiff lists Crews, Boyd, Holden, Thompson, and four John Does in the caption of his motion.  However, Plaintiff does not state any factual allegations concerning these Defendants. To state a claim for relief, Plaintiff must show how each Defendant is accountable because the Defendant was personally involved in the acts about which Plaintiff complains.  *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976).  Because Plaintiff fails to allege any facts concerning these individuals, his motion to amend his complaint to add claims against Crews, Boyd, Holden, Thompson, and the John Does will be denied.

#### b.    Discrimination

Plaintiff makes many broad claims of discrimination throughout his motion to amend and describes one incident when he and another white inmate were told by Defendant Jefferson to leave the prison library while black inmates were not.

The Court will construe Plaintiff's discrimination claims as claims under the Fourteenth Amendment's Equal Protection Clause, which provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws."  U.S. CONST. amend. XIV, § 1.  To prove a violation of the Equal Protection Clause, a plaintiff must allege an invidious discriminatory purpose or intent.  *Washington v. Davis*, 426 U.S. 229 (1976); *Pers. Adm'r of Mass. v. Feeney*,

---

[1]The Court previously allowed Plaintiff's official-capacity claims for injunctive relief against Dotson, Jefferson, and Woods for alleged denial of access to courts to proceed.

9

442 U.S. 256 (1979).  "'Discriminatory purpose' . . . implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group."  *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. at 279.

Plaintiff fails to state the race of any of the Defendants.  To the extent that he makes broad, conclusory claims of discrimination without setting forth any factual bases, Plaintiff's motion to amend will be denied.  The Court is not required to accept bare legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  With regard to Plaintiff's allegations that Defendant Jefferson told him and another white inmate to leave the prison library while not telling black inmates to leave, Plaintiff fails to state Defendant Jefferson's race or to give any factual basis for his claim that Jefferson asked him to leave the library because of his race.  He therefore fails to allege an invidious discriminatory purpose or intent.

Consequently, Plaintiff's motion to amend the complaint to add discrimination claims will be denied.

### c. Grievance handling

Plaintiff seeks to add claims against Dotson concerning his handling of Plaintiff's grievances.  However, there is "no constitutionally protected due process interest in unfettered access to a prison grievance procedure."  *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005).  By the same token, a plaintiff cannot maintain a claim against a prison official based solely on his or her denial of the plaintiff's grievance.  "The 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under

10

§ 1983." *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee*, 199 F.3d 295, 300 (6th Cir. 1999)). "The mere denial of a prisoner's grievance states no claim of constitutional dimension." *Alder v. Corr. Med. Servs.*, 73 F. App'x 839, 841 (6th Cir. 2003). A plaintiff's claim is against the subjects of his grievances, not those who merely decided whether to grant or deny the grievances. *See Skinner v. Govorchin*, 463 F.3d 518, 525 (6th Cir. 2006) ("Skinner's complaint regarding Wolfenbarger's denial of Skinner's grievance appeal, it is clear, fails to state a claim."); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance."); *Nwaebo v. Hawk-Sawyer*, 83 F. App'x 85, 86 (6th Cir. 2003) (same); *Simpson v. Overton*, 79 F. App'x 117, 120 (6th Cir. 2003) ("[T]he denial of an appeal cannot in itself constitute sufficient personal involvement to state a claim for a constitutional violation."); *Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) ("The denial of the grievance is not the same as the denial of a request to receive medical care."). Thus, where the only allegation against a defendant relates to the denial of a grievance, a plaintiff fails to allege any personal involvement by the defendant in the alleged denial of medical treatment. *Id.*

For these reasons, Plaintiff's motion to add claims against Dotson concerning his actions in handling his grievances will be denied.

### d.   Legal copies

Plaintiff alleges that Simpson failed to furnish him with copies of exhibits he needed for filing his habeas action. Presumably Plaintiff alleges that this violated his right to access the courts. In order to state a claim for interference with access to the courts, a plaintiff must show

actual injury. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)(en banc). "An inmate cannot establish relevant actual injury simply by establishing that his prison's law library or legal assistance program is subpar in some theoretical sense. That would be the precise analog of the healthy inmate claiming constitutional violation because of the inadequacy of the prison infirmary." *Lewis v. Casey*, 518 U.S. 343, 351 (1996). "'Meaningful access to the courts is the touchstone,' and the inmate therefore must go one step further and demonstrate that the alleged shortcomings in the library or legal assistance program hindered his efforts to pursue a legal claim." *Id.* (internal citations omitted). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005).

Here, Plaintiff has not alleged that Simpson's failure to furnish him with copies of exhibits actually prevented him from meaningfully accessing the courts. Moreover, Plaintiff need not file exhibits when initiating an action. As another court explained in dismissing a similar claim: "In fact, he could have filed his claim . . . with a short and plain statement of the facts within his personal knowledge, and obtained the medical records for supporting evidence through the discovery process." *Lee v. Wright*, No. 94-CV-012, 1995 U.S. Dist. LEXIS 20187, at *4-5 (N.D. Ind. Nov. 8, 1995).

As such, Plaintiff's motion to add a claim against Simpson in connection with his allegations regarding legal copies will be denied.

### e.     Retaliation

Retaliation based upon a prisoner's exercise of his constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d at 394. In order to set forth a First

Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*

Plaintiff states that Dotson denied him access to the Westlaw computers in retaliation for exercising his rights under the grievance procedure.  However, his motion also discusses many occasions where he was using the Westlaw computers, and he seems to have had ample access to the prison library.  Upon review, the Court finds that an occasional denial of access to a prison's Westlaw computers is not a sufficiently adverse action that would deter a person of ordinary firmness form engaging in protected conduct.  *See Thaddeus-X*, 175 F.3d at 394; *see also Green v. Caruso et al.,* No. 1:10-cv-958, 2011 U.S. Dist. LEXIS 30520, at *26 (W.D. Mich.  Mar.  24, 2011) (denying access to the law library on two occasions was not sufficiently adverse).

Plaintiff also claims that Roby and Kessinger had him transferred for using the grievance procedure.  "[O]rdinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."  *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) (citing *Smith v. Yarrow*, 78 F. App'x 529, 543-44 (6th Cir. 2003)).  "[T]ransfer to another institution of the same security level, with no other aggravating factors, is not sufficiently adverse to deter a person of ordinary firmness from engaging in the exercise of protected First Amendment activity."  *Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 471 (6th Cir. 2001); *Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006) ("[T]he transfer of a prisoner may rise to the level of unconstitutional retaliation where there are foreseeable consequences to the transfer that would inhibit the prisoner's ability to access the courts.").  Plaintiff does not

allege that transfer to LLCC carried any aggravating factors or foreseeable consequences that the transfer would inhibit his ability to access the courts.  As such, Plaintiff's motion to add retaliation claims against Roby and Kessinger in connection with his transfer will be denied.

Plaintiff also states that Jefferson gave him a write-up after he refused to accept an indigent pack.  He states that this was retaliation for filing grievances.  Because Plaintiff admits in the motion that he refused to accept the indigent pack and states that he was found guilty, Plaintiff's motion to add this retaliation claim will be denied.  *See Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) ("A finding of guilt [on the misconduct charge] based upon some evidence of a violation of prison rules 'essentially checkmates [a] retaliation claim.'") (citing *Henderson v. Baird*, 29 F.3d 464, 469 (8th Cir. 1994)).  Moreover, the Court finds that the denial of a writing tablet in an indigent pack is not sufficiently adverse to deter a person of ordinary firmness from engaging in protected conduct.  *See Thaddeus-X*, 175 F.3d at 394.

Plaintiff also alleges retaliation by Mensing and Walls based on their write-up and reprimand for Plaintiff's failure to have a pass.  Again, he states that he was found guilty of the charge.  Therefore, he cannot state a retaliation claim based on the write-up.  *See Jackson v. Madery*, 158 F. App'x at 662.  The motion to add a retaliation claim against Mensing and Walls will be denied.

Plaintiff also claims that Jefferson made up a false disciplinary report stating that Plaintiff had called Dotson an expletive in a loud voice in retaliation for using the Westlaw computers and filing grievances against Jefferson, Dotson, and Woods.  He states that he told Deckard this but that she still recommended that it go before the Adjustment Committee.  He states that the disciplinary action was later dismissed.  <u>Upon review, the Court will allow</u>

14

Plaintiff to amend the complaint to add retaliation claims against Jefferson and Deckard in their individual capacities based upon the alleged false disciplinary report.

        **f.**     **Verbal incidents**

Plaintiff describes conversations in which various individuals asked him why he did not have a pass, asked him why he did not have a prison job, told him that he was spending too much time using the Westlaw library, or told him that his time for filing a habeas action had expired. Plaintiff fails to state how these conversations violated his rights, and the Court does not discern any reason. To the extent that Plaintiff may argue they constitute harassment, although verbal harassment by prison officials is not condoned, the law is clear that verbal harassment by itself does not violate the Constitution. *See Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987); *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987) ("Verbal harassment or abuse . . . is not sufficient to state a constitutional deprivation under 42 U.S.C. § 1983."). Therefore, Plaintiff's motion to add claims based on any conversation he had with Defendants will be denied.

        **g.**     **LLCC**

Plaintiff also seeks to supplement his complaint to add claims against Cathy Buck in connection with problems he had accessing the Westlaw computers while he was housed at LLCC. Rule 20 provides as follows:

> Persons . . . may be joined in one action as defendants if: (A) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all defendants will arise in the action.

Fed. R. Civ. P. 20(a)(2). Plaintiff's claims concerning his incarceration at LLCC are not

properly joined under Fed. R. Civ. P. 20(a).  Plaintiff's other claims concern his incarceration at KSR.  His claims against Buck concerning Westlaw access at LLCC are not asserted jointly, severally, or "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," Fed. R. Civ. P. 20(a)(1)(A), since they concern different institutions and different policies and procedures and would require different witnesses.  Plaintiff therefore cannot join Buck as a defendant in this action, and his motion to add claims against Buck will be denied.

However, this does not prevent Plaintiff from filing a separate action concerning his incarceration at LLCC should he choose to do so.  **The Clerk of Court is DIRECTED to send Plaintiff a § 1983 form packet should Plaintiff wish to initiate a separate action.**

## III.

For the foregoing reasons, **IT IS ORDERED** that Plaintiff's motion to amend and supplement (DN 22) is **GRANTED in part and DENIED in part**.  The motion to amend the complaint will be granted with respect to Plaintiff's claims for retaliation against Jefferson and Deckard in their individual capacities based upon Plaintiff's allegations that they filed a false disciplinary report, in which they claimed Plaintiff called Dotson an expletive, in retaliation for Plaintiff filing grievances and using the Westlaw computers.  The motion to amend and supplement will be denied with respect to all other claims Plaintiff seeks to add.

**IT IS FURTHER ORDERED** as follows:

(1)     **The Clerk of Court shall forward by certified mail, return receipt requested, one copy of the amended complaint (DN 22) and this Memorandum Opinion and Order, to the Justice & Public Safety Cabinet, Office of Legal Counsel, Frankfort, Kentucky.**

16

General Counsel shall have **30 days** after receipt by certified mail of the amended complaint and this Memorandum Opinion and Order to complete and return a notice of waiver of service for Deckard. **Should counsel for the Justice & Public Safety Cabinet not represent Deckard, the Court requests General Counsel to provide a forwarding or last known address for her so that it may ensure service.** If the address is not public record, counsel shall file the information **under seal**.

(2)     The Clerk of Court shall prepare and issue summons and cause a copy of the amended complaint and summons to be served on Deckard should a waiver not be returned.  In the event the summons is returned to the Court unexecuted, the Clerk of Court is **DIRECTED** to mail a copy of the returned, unexecuted summons and the USM-285 form to Plaintiff and to make a notation in the docket sheet of having done so.  **Plaintiff is WARNED that in the event he receives such notification, he must take steps to remedy the defect in service.  Failure to do so within 120 days of entry of this Order may result in dismissal of Deckard.**

(3)     Deckard's answer to the amended complaint shall be filed no later than **60 days** after waiver of service.  However, if service is required, the answer shall be filed no later than **21 days** after service of summons.

(4)     Jefferson's answer to the amended complaint shall be filed no later than **21 days** from the entry date of this Memorandum Opinion and Order.

17

The Court will also enter a separate Second Revised Scheduling Order.

Date:

cc:    Plaintiff, *pro se*
       Counsel of record
       Defendant Dawn C. Deckard
4412.010

18